Filed 8/18/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CALIFORNIA-AMERICAN WATER COMPANY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARINA COAST WATER DISTRICT,<br><br>    Defendant and Appellant;<br><br>MONTEREY COUNTY WATER RESOURCES AGENCY,<br><br>    Defendant and Respondent. | A145604<br><br>(San Francisco County<br>Super. Ct. No. CGC13528312) |

To address Monterey County's water needs, two public agencies and a water company entered into five interrelated agreements to collaborate on a water desalination project. After it was revealed that a board member of one of the public agencies had a potential conflict of interest, the water company took the position that the agreements were void under Government Code section 1090. In this action for declaratory relief, the trial court agreed that four of the five agreements were void. On appeal, appellant Marina Coast Water District (Marina or district) argues that the claims challenging the parties' agreements were time barred and that the trial court lacked jurisdiction to consider the parties' dispute. We disagree with both contentions and affirm. In the published portion of our decision, we hold that a public agency is not bound by the 60-

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.C.

1

day limitation period that governs validation actions when it seeks a judicial determination of the validity of a contract under section 1090.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

A. *The Parties Agree to Collaborate on a Desalination Project.*

Marina is a public agency formed to provide water for the City of Marina and neighboring communities. Respondent Monterey County Water Resources Agency (Monterey or agency) also is a public water agency. Respondent California American Water Company (California-American) is a regulated water utility that serves customers in California, including most of the Monterey peninsula.

In 1995, the State Water Resources Control Board ordered California-American to find a new source of water for about two-thirds of the supply it pumped to its customers. In response, California-American entered into agreements with Marina and Monterey to pursue a regional desalination project (RDP or the desalination project). Five of these agreements (the RDP agreements), entered into over the course of a year, are the focus of this case:

- In February and March 2010, the parties entered into a "Reimbursement Agreement," in which California-American agreed to reimburse Marina and Monterey their costs in pursuing the desalination project, subject to later repayment or forgiveness.

- On April 6, 2010, the parties entered into a "Water Purchase Agreement" (WPA), which provided for the design and construction of various facilities.

- Also on April 6, 2010, the parties entered into a "Settlement Agreement," which established a process for proposing the desalination project to the California Public Utilities Commission (CPUC) for approval.

- On January 11, 2011, the parties entered into a "Project Management Agreement," under which an entity called RMC Water and Environment (RMC) was selected to be the project manager.

2

- Also in January 2011, the parties entered into a "Credit-Line Agreement," which established a line of credit available to the public agencies to manage their project-related finances.

In the midst of these agreements being negotiated and entered into, the CPUC approved the desalination project in December 2010.

### B. *The Parties Learn of a Potential Conflict of Interest by a Monterey Board Member.*

Stephen Collins was a member of Monterey's appointed board of directors when the RDP agreements were being negotiated and, in some cases, entered into. Starting in January 2010, he also was a paid consultant for RMC to advocate for the agreements through a contract he had with Marina. RMC ultimately paid Collins $160,000 for his work. At a February 2011 meeting of Monterey's board of directors, Collins exposed his potential conflict of interest by recusing himself from a vote on the selection of RMC as the manager of the desalination project. Local media began reporting on the possible conflict of interest, and an investigation followed. Collins resigned from Monterey's board of directors on April 1, 2011.

By July 2011, Monterey took the position that the RDP agreements were void due to Collins's conflict of interest. Collins was eventually convicted of a felony for violating Government Code section 1090, which bars public officers or employees from being "financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

### C. *California-American Initiates These Proceedings.*

California-American filed its complaint for declaratory relief against Marina and Monterey on October 4, 2012.[1] It alleged two causes of action: the first to have the court declare that the RDP agreements were void under Government Code section 1090, and

---

[1] California-American filed its complaint in Monterey County, but the action was transferred to San Francisco under Code of Civil Procedure section 394, which permits a change of venue for certain actions brought against counties. All statutory references are to the Code of Civil Procedure unless otherwise specified.

3

the second to declare that California-American had the right to terminate the agreements, regardless of any conflict of interest, as a result of Monterey's anticipatory repudiation of them. On November 19, 2012, Marina answered and stated as an affirmative defense that California-American's complaint was barred by the statute of limitations. It also filed a cross-complaint against California-America and Monterey seeking a declaration barring any challenges to the RDP agreements. Marina's cross-complaint alleged seven causes of action, three of which were based on the statute of limitations and four of which were based on the Public Utilities Code.

### D. The Parties Dispute the Applicable Statute of Limitations.

Throughout this litigation, Marina has asserted that the claims seeking to have the RDP agreements declared void must be rejected as a result of the statute of limitations. According to Marina, the applicable limitation period is the one governing validation actions under section 860 et sequitur (the validation statutes). The validation statutes establish a process for a public agency to obtain a judicial determination on whether an agency action is valid and not subject to attack. "The public agency may validate its action by either active or passive means. It may initiate an action in rem to establish the validity of the matter. (§ 860.) Alternatively, the agency may do nothing, and if no 'interested person' brings suit to determine the validity of the public agency's action within 60 days (§ 863), the action is deemed valid. (§ 869.)" (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 19.) The statute of limitations for interested persons to bring a validation action is extremely short, just 60 days. (§ 860.)

In contrast, California-American and Monterey have asserted that the declaratory-relief claims seeking to have the RDP agreements declared void were timely because actions under Government Code section 1090 may be brought within four years after the plaintiff discovers or reasonably could have discovered a prohibited conflict of interest. (Gov. Code, § 1092, subd. (b).) On the substantive merits of their claims, they contend that the agreements are, and must be recognized as, void because when a contract is made by a public officer or employee who has a financial interest in the contract, "the affected contract is void from its inception . . . ." (*Lexin v. Superior Court* (2010) 47 Cal.4th

4

1050, 1073; see also *Thomson v. Call* (1985) 38 Cal.3d 633, 646 & fn. 15 [contract in which public officer is interested is void, not merely voidable]; Gov. Code, § 1092, subd. (a).)

### E. Marina Files the First Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

Marina sought summary judgment or adjudication of (1) the first cause of action in California-America's complaint (seeking a declaration that the RDP agreements were void under Government Code section 1090) and (2) the seven causes of action in its cross-complaint. Its goal in doing so was to obtain an order that the trial court was precluded from ruling on the agreements' validity. In what we shall refer to as "the first summary judgment order," the court made two important rulings for purposes of this appeal. First, it considered the three statutes that Marina claimed triggered the applicability of the validation statutes to this case. (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 345 [determination of whether validation statutes apply often "presents a 'complex and debatable' issue"].) The court concluded that the validation statutes applied here by virtue of the Monterey County Water Resources Agency Act (the Act). Section 52-39 of the Act provides that "[a]ny judicial action or proceeding to attack, review, set aside, void, annul, or challenge the validity or legality of the formation of a zone, *any contract entered into by the agency* or a zone, any bond or evidence of indebtedness of the agency or a zone, or any assessment, rate, or charge of the agency or a zone shall be commenced within 60 days of the effective date thereof," and such action shall be brought under the validation statutes. (Water Code, Appen., § 52-39, italics added.) The court found that all five of the RDP agreements were covered by this broad language, and it therefore granted Marina's motion for summary adjudication to the extent it sought an order rejecting California-American's first cause of action seeking to have the agreements declared void.

Although this ruling rejected California-American's first cause of action, it did not entirely foreclose a judicial consideration of whether the RDP agreements could be declared void. In its second important ruling in the first summary judgment order, the

trial court considered Marina's cross-complaint alleging that both cross-defendants were time barred from bringing a claim and held that the validation statutes do not preclude a *public agency* from seeking to have a contract declared void. (§ 869.) The court thus found that Monterey, as a public agency, could challenge the RDP agreements under Government Code section 1092, and it therefore denied summary adjudication on Marina's claims in its cross-complaint to preclude any such challenge.[2] Although the court later reversed its position on California-American's ability to seek a declaration under Government Code section 1090, its rulings in the first summary judgment order shaped the proceedings that followed.

### F. Monterey Files a Cross-Complaint and the Second Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

Monterey responded to the first summary judgment order by filing its own cross-complaint, with a single cause of action seeking "a declaration of the parties' rights and duties with respect to the RDP Agreements and a declaration the RDP Agreements are void" under Government Code section 1090. Marina answered the cross-complaint by again asserting that such a claim was barred by the statute of limitations governing validation actions, whereas California-American answered by contending that if the RDP agreements were void as to Monterey they were void as to all parties.

Monterey then moved for summary adjudication both on its cause of action in its cross-complaint and on all seven causes of action in Marina's cross-complaint. In what we shall refer to as the trial court's "second summary judgment order," the court first ruled in favor of Monterey as to Marina's cross-complaint, which meant that Monterey's claim seeking to have the agreements declared void under Government Code section 1090 could proceed notwithstanding the validation statutes' limitations period. The court also ruled against Marina on its four causes of action based on various provisions of the Public Utilities Code, which meant that Marina's causes of action based on those

---

[2] The trial court also rejected Marina's arguments that the Public Utilities Code barred any challenge to the RDP agreements, and it therefore denied summary adjudication in Marina's favor on the causes of action based on that code.

provisions could not proceed. Finally, the court denied summary adjudication on the merits of Monterey's cross-complaint because it found that whether Collins violated Government Code section 1090 involved a triable issue of fact.

### G. The Case Is Tried.

A bench trial was held over four days in December 2014. Witnesses testified about the desalination project, the preparation of the RDP agreements, and Collins's involvement in the venture.

In its statement of decision issued in April 2015, the trial court reiterated its view that the RDP agreements were contracts subject to the validation statutes under section 52-39 of the Act. And it determined that the Reimbursement Agreement, the Water Purchase Agreement, the Project Management Agreement, and the Credit-Line Agreement also were subject to the validation statutes under two additional statutes (Gov. Code, § 53511[3] and Wat. Code, § 30066[4]) based on these four agreements' connection with the desalination project's financing. (E.g., *City of Ontario v. Superior Court*, *supra*, 2 Cal.3d at p. 344 ["The typical validating action seeks a declaratory judgment that the bonds, assessments, etc., of the agency are or are not valid . . . ."]; *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1170 [validation actions "most commonly used to secure a judicial determination that a local agency's proposed issuance of bonds is valid"]; *Kaatz v. City of Seaside*, *supra*, 143 Cal.App.4th at pp. 38, fn. 32, 42 [Wat. Code § 30066 concerns validation of assessments, and Gov. Code, § 53511 applies to contracts "that are in the nature of, or directly relate to a public agency's bonds, warrants or other evidences of indebtedness"].) At the same time, it

---

[3] Subdivision (a) of the statute provides, "A local agency may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to" the validation statutes.

[4] The statute is similar to Government Code section 53511, subdivision (a), and provides: "An action to determine the validity of an assessment, or of warrants, contracts, obligations, or evidences of indebtedness pursuant to this division may be brought pursuant to" the validation statutes.

7

determined that the Settlement Agreement was not subject to the validation statutes under these two additional statutes because it was unconnected with the project's financing.

Although the court had concluded in its first summary judgment order that California-American's cause of action under Government Code section 1090 was barred by the short statute of limitations governing validation actions, it re-visited and rejected this conclusion in the statement of decision. In the statement of decision, the court held that the longer four-year statute of limitations governing actions under Government Code section 1090 applied to all claims to have the agreements declared void under Government Code section 1090, whether brought by Monterey or California-American, and it found that Collins violated this section by participating in the making of four of the five contracts, but not the Credit-Line agreement. Accordingly, the court declared void the Reimbursement Agreement, the Settlement Agreement, the Project Management Agreement, and the Water Purchase Agreement.

After the trial court issued its statement of decision, California-American dismissed its second cause of action without prejudice. The court then entered judgment on the three different complaints.

*H. Marina Appeals.*

Marina timely appealed from the judgment, and this court granted the district's request for calendar preference. Two related appeals from orders regarding attorney fees and costs remain pending and are currently stayed until 30 days after the court's opinion becomes final in this appeal. (Nos. A146166, A146405.)[5]

Respondents filed a joint motion to dismiss the appeal, arguing that the appeal violates the "one final judgment rule" because there are separate but related complaints for damages pending in the trial court based on the same underlying facts. On November 24, 2015, the court denied the motion. In its respondent's brief, Monterey again argues that the appeal should be dismissed, but we decline to revisit the court's previous ruling.

---

**5** On its own motion, the court amends the order staying the two related appeals to clarify that they remain stayed until after the remittitur issues in this appeal.

8

## II.
### DISCUSSION

A. *The Trial Court Properly Found that the Claims Seeking to Have the RDP Agreements Declared Void Were Not Time Barred.*

As we have discussed, the trial court's statement of decision ruled on declaratory-relief causes of action that were asserted in three separate complaints, in unique procedural postures, and brought by different types of entities (one water utility and two public agencies). But the upshot of the court's rulings on all of these causes of action was the same: none of the claims seeking to have the RDP agreements declared void were time barred, and four of the five agreements were declared void.

On appeal, Marina continues to insist that the challenges to the RDP agreements were time barred because they were not filed within the validation statutes' 60-day limitations period. Respondents maintain that Marina's argument leads to absurd results. We reject Marina's argument, as did the trial court in the first summary judgment order, for the more basic reason that the limitation period does not apply to public entities, such as Monterey, under the express terms of the validation statutes.

True enough, the broad language of section 52-39 of the Act appears to make the validation statutes applicable to any claim, even one brought under Government Code section 1090, that challenges a contract entered into by Monterey. In sweeping language, that section provides that "*[a]ny judicial action* or proceeding to attack, review, set aside, void, annul, or *challenge the validity* of . . . *any contract entered into by [Monterey]* . . . shall be commenced within 60 days of the effective date thereof" under the validation statutes. (Water Code, Appen., § 52-39, italics added; see also *Kaatz v. City of Seaside*, *supra*, 143 Cal.App.4th at p. 41 [noting in dicta that § 52-39 of the Act "permit[s validation] proceedings to determine the validity of *any* contract"], italics added.)

Given the broad language, the trial court concluded in the first summary judgment order that section 52-39 of the Act means that the validation statutes applied to all five RDP agreements. Monterey disagrees with this conclusion and notes that there is no

9

evidence the agency has ever applied such a literal interpretation to the provision, which "would subject Monterey's employment agreements, vendor contracts and routine agreements for services and supplies to the validation statutes." We share Monterey's concerns over such a literal construction of the statute but conclude that we need not reach the issue to resolve this appeal. We will assume, but specifically do not decide, that all the RDP agreements are within the scope of section 52-39's language.[6]

Even with this assumption, we believe for several reasons that it would be imprudent to jump to the conclusion, as Marina urges, that the validation statutes' 60-day limitations period therefore applies to any claim by a party that seeks to have contracts declared void under section 1090. First, as the trial court noted, such a conclusion could contravene the principle that a more-recent and more-specific statute (such as Government Code section 1092) normally prevails over earlier and more-general statutes (such as the validation statutes). Second, such a conclusion would be hard to square with the stated purpose of Government Code section 1090, which is to recognize that a contract made by a public officer or employee who has a financial interest in it is "void from its inception." (*Lexin v. Superior Court*, *supra*, 47 Cal.4th at p. 1073.) Many instances can be imagined in which an interested party could not reasonably be expected to know of an officer or employee's financial interest in a contract within 60 days of its adoption.[7] We are skeptical of the proposition that the Legislature intended for parties to a contract to be categorically barred from seeking to have the contract declared void under Government Code section 1090 simply because the officer or employee's financial interest was not discovered within 60 days of the contract's approval.

---

[6] In its statement of decision following trial, the trial court addressed whether Government Code section 53511, subdivision (a), and Water Code section 30066, the other two statutes relied upon by Marina, applied to the RDP agreements, a question that required more analysis. In light of our assumption that section 52-39 of the Act applies, we need not address the possible applicability of the other two statutes.

[7] This case may be such an instance. Although the parties dispute when Collins's conflict of interest became apparent, we consider the record to be far from clear that either California-American or Monterey knew or should have known of Collins's conflict of interest until after 60 days had passed following each contract's adoption.

10

Third, as California-American and Monterey emphasize on appeal, it is questionable whether a claim based on Government Code section 1090 is a type of action subject to the validation statutes. (*Santa Clarita Organization for Planning & the Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, 308 [court looked to gravamen of action to determine whether validation statutes apply; claim under Gov. Code, § 1090 did not trigger validation statutes]; see also *Santa Clarita Organization for Planning & the Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1096-1099 [not all actions by public agency are subject to validation].)[8] "The validation statutes do not apply just because a claim or action seeks to challenge—and thereby, in the colloquial sense, to 'invalidate'—an agency's action." (*Ibid.*) Suits under Government Code section 1090 may be pursued only by a party to the contract seeking to void it (§ 1092, subd. (a); *San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679, 684), whereas validation actions are in rem proceedings meant to quickly test the validity of contracts so that public agencies know whether they may proceed under them. (*McLeod v. Vista Unified School Dist.*, *supra*, 158 Cal.App.4th at pp. 1165-1166.)

Here, we need not decide whether the validation statutes' 60-day limitation period applies generally to claims brought under Government Code section 1090 challenging contracts otherwise subject to the validation statutes, because claims brought by public entities, such as Monterey, are statutorily exempted under the express language of the validation statutes. Section 52-39 of the Act provides that any judicial action to challenge the validity of any contract entered into by the agency "shall be commenced within 60 days of the effective date thereof" and also provides that "[Monterey] may bring an action pursuant to [the validation statutes] to determine the validity of the matters referred to in this section." Section 869 (part of the validation statutes), in turn, provides, "No contest *except by the public agency* . . . of any thing or matter under this chapter shall be made other than within the time and the manner herein specified. The

---

[8] By motion filed on January 20, 2016, Marina asks the court to take judicial notice of seven pleadings filed in the Second District to provide additional context to the court's 2015 *Santa Clarita* opinion. We deny the request.

11

availability to any public agency . . . of the remedy provided by this chapter, *shall not be construed to preclude the use by such public agency . . . of mandamus or any other remedy to determine the validity of any thing or matter*." (Italics added.) Thus, when the validation statutes apply, while "an interested person *must* bring an action within the statutory time limits or be forever barred from contesting the validity of the agency's action in court, the public agency is not so limited." (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 851, original italics; see also *City of Ontario v. Superior Court*, *supra*, 2 Cal.3d at p. 341 [§ 869 authorizes public agency to disregard 60-day statute of limitations imposed on interested parties].) This gives public agencies three options: bringing a validation action, doing nothing, or waiting past the statutory time limits that apply to interested persons. (*Friedland*, at pp. 850-851.)

Marina ignores this third option and argues that because an agency's action may be validated by doing nothing, the RDP agreements here could not be challenged after 60 days, when they were "validated by operation of law." In making its argument, Marina places undue reliance on *Millbrae School Dist. v. Superior* Court (1989) 209 Cal.App.3d 1494, 1498-1499. In *Millbrae*, a redevelopment agency and a city council approved a redevelopment project, and various public agencies not connected to the project challenged it under the validation statutes. (*Millbrae School Dist.*, at p. 1496.) The trial court dismissed their action because they failed to properly serve summons under section 863, and they argued in a writ proceeding that they were permitted under section 869 to challenge an action without meeting the requirements for validation proceedings because of their status as public agencies. (*Millbrae School Dist.*, at p. 1498.) Division Three of this court explained that after the validation statutes were expanded to cover more types of local agencies, the second sentence of section 869 (regarding the availability to public agencies of remedies other than the validation statutes) was added to leave no doubt that local agencies would retain previously available means to "*validate[]* and *enforce[]* their own decisions," but the statute did not grant to all public agencies "a new right to make third party challenges to each other's actions outside of the validating procedures." (*Millbrae School Dist.*, at p. 1499, italics

12

added.)  Here, of course, Monterey was not a third party but was an actual party to the RDP agreements.

Marina claims that *Millbrae*'s focus on agencies retaining procedures to *validate* and enforce their actions means that agencies cannot use section 869 to *invalidate* their own actions, but we disagree.  Section 869 broadly provides that an agency may "contest . . . any thing or matter under this chapter" and that the validation statutes are not meant to preclude an agency's use "of mandamus or any other remedy *to determine the validity* of anything or matter."  (Italics added.)  Monterey's cross-complaint contested the RDP agreements and requested the trial court to recognize their invalidity under Government Code section 1090.  (See also *Pajaro Valley Water Management Agency v. Amrhein* (2007) 150 Cal.App.4th 1364, 1377 [agency's right to seek declaratory relief reinforced by § 869]; *Moorpark Unified School Dist. v. Superior Court* (1990) 223 Cal.App.3d 954, 960 [use of term "contest" in both §§ 869 and 862 meant "to enable all interested parties to air and to resolve in one suit all the distinct concerns of the various interested parties"].)

Marina further contends that doing nothing within the validation statutes' 60-day limitations period has the same effect as securing a validation judgment, but we disagree with this contention as well.  By statute, validation judgments are "forever binding and conclusive."  (§ 870, subd. (a).)  In *San Bernardino County v. Superior Court*, *supra*, 239 Cal.App.4th at page 684, the court rejected a challenge to a contract under Government Code section 1090 because the challengers were not parties to the contract and thus lacked standing.  The same court contemporaneously held in *Colonies Partners, L.P. v. Superior* Court (2015) 239 Cal.App.4th 689, 692-695, that even if the challengers could amend their complaint to allege standing, they still could not maintain their action under the Government Code because San Bernardino County previously had obtained a validation judgment concluding that its obligations were valid, legal, and binding. Marina placed great weight on *Colonies Partners* at oral argument, but the discussion in *Colonies Partners* arguably is dicta in light of the court's conclusion in *San Bernardino*. In any event, we need not and do not decide the effect of such a judgment on the parties'

13

ability to bring a subsequent action under Government Code section 1090 here, because no validation action was ever initiated and thus no validation judgment was obtained.

In short, even if we set aside our skepticism and accept for the sake of argument Marina's assertion that the validation statutes' 60-day limitation period applies generally to claims brought under Government Code section 1090 where a contract implicates the validation statutes, we must still conclude that that limitation period does not control here because Monterey, as a public agency, is exempt from it. (§ 869.) Thus, we agree with the trial court's rulings that the 60-day limitation period did not preclude Monterey's challenge. (*Ibid.*)

We next turn to consider whether Monterey's cause of action was filed within Government Code section 1090's four-year limitation period, and we conclude that it was because it related back to Marina's cross-complaint. Marina contends that the limitations period began to run "in or around January 2010" (when Collins started to be paid for his work for RMC),[9] and that Monterey's cross-complaint was untimely because it was not filed until April 16, 2014, more than four years later. In rejecting Marina's argument, the trial court found that Monterey's claim was timely because it related back to the date that Marina's cross-complaint against Monterey and California-American was filed, November 19, 2012. We agree with the trial court.

As a general rule, the filing of a complaint tolls the statute of limitations applicable to a cross-complaint so long as the cross-complaint is related to the original complaint and its causes of action were not barred when the original complaint was filed. (*Trindade v. Superior Court* (1973) 29 Cal.App.3d 857, 860.) "Such a cross-complaint need only be subject-matter related to the plaintiff's complaint—i.e., arise out of the same occurrence . . . —to *relate back* to the date of filing the complaint for statute of limitations purposes." (*Sidney v. Superior Court* (1988) 198 Cal.App.3d 710, 714, italics

---

[9] The parties dispute when the limitations period began to run. We accept, without deciding, that any cause of action under Government Code section 1090 began to accrue in January 2010 because Marina does not argue that California-American and Monterey knew or should have known of Collins's conflict of interest before then.

14

added.) " 'The principle underlying the rule that a statute of limitations is suspended by the filing of the original complaint is that the plaintiff has thereby waived the claim and permitted the defendant to make all proper defenses to the cause of action pleaded.' " (*Trindade*, at pp. 859-860, quoting *Western etc. Co. v. Tuolumne etc. Corp.* (1944) 63 Cal.App.2d 21, 31 (*Western Pipe*).) Such waiver principles do not apply, however, where one defendant files a cross-complaint against another defendant, who has taken no action that amounts to a waiver simply by being named in a lawsuit. (*Western Pipe*, at pp. 23, 31-32.)

Here, both Monterey and Marina were named as defendants in California-American's original complaint. Marina argues that this case is thus akin to *Western Pipe*, because Monterey was a defendant who filed a cross-complaint against the original plaintiff (California-American) *and* another defendant (Marina). (*Western Pipe*, *supra*, 63 Cal.App.2d at pp. 31-32.) But this argument overlooks that Marina filed its own cross-complaint naming Monterey as a defendant before Monterey filed its cross-complaint. In its cross-complaint, Marina sought a declaration that challenges to the RDP agreements were time barred. By doing so, it forfeited any objection to Monterey filing its own cross-complaint for declaratory relief arising out of the identical subject matter. Marina argues it would be unjust for the court to hold that Monterey's cross-complaint related back to Marina's cross-complaint because that would "punish Marina solely for timely asserting affirmative defenses to Cal[ifornia]-Am[erican]'s initial complaint." But Marina did not solely assert affirmative defenses to the original complaint—it also filed a separate cross-complaint. We conclude, as did the trial court, that Monterey's claim under Government Code section 1090 was timely filed because it related back to Marina's earlier cross-complaint filed on November 19, 2012, and that date was well within the four-year statute of limitations for claims that Marina argues began to accrue in January 2010.

Thus, neither the validation statutes' 60-day limitation period nor Government Code section 1090's four-year limitation period barred Monterey's request to have the agreements declared void. And since the trial court could properly consider Monterey's

15

request to have the agreements declared void, we need not decide the timeliness of California-American's original complaint that sought the same relief.

### B. *The Trial Court Properly Declared the RDP Agreements Void.*

Having concluded that the trial court was not time barred from considering Monterey's request to have the agreements declared void, we turn to consider whether the court properly found on the merits that four of the five agreements were void. Marina argues that the court erred in declaring them void because Collins lacked a sufficient "financial interest" in the RDP agreements to constitute a violation Government Code section 1090. We again agree with the trial court.

"To determine whether section 1090 has been violated, a court must identify (1) whether the defendant government officials or employees participated in the making of a contract in their official capacities, (2) whether the defendants had a cognizable financial interest in that contract, and (3) (if raised as an affirmative defense) whether the cognizable interest falls within any of [the statutory] exceptions for remote or minimal interests." (*Lexin v. Superior Court*, *supra*, 47 Cal.4th at p. 1074.) Here, Marina does not argue the first or third elements. It neither challenges the trial court's finding that Collins participated in his official capacity in the making of four of the five RDP agreements, nor does it claim that any financial interest on Collins's part fell within a statutory exemption. Instead, the district argues only the second element: that Collins lacked a cognizable financial interest in the four RDP agreements in which he was found to have participated.

" '[T]he term "financially interested" in section 1090 cannot be interpreted in a restricted and technical manner.' [Citation.] The defining characteristic of a prohibited financial interest is whether it has the potential to divide an official's loyalties and compromise the undivided representation of the public interests the official is charged with protecting. [Citation.] Thus, that the interest 'might be small or indirect is immaterial so long as it is such as deprives the [people] of his overriding fidelity to [them] and places him in the compromising situation where, in the exercise of his official judgment or discretion, he may be influenced by personal considerations rather than the

16

public good.' " (*Lexin v. Superior Court*, *supra*, 47 Cal.4th at p. 1075.) "[Government Code section] 1090 is triggered when a public official has a direct financial interest in a contract. Even when a public official's financial interest is indirect, section 1090 will still apply unless the interest is too remote and speculative." (*Carson Redevelopment Agency v. Padilla* (2006) 140 Cal.App.4th 1323, 1330.) "The sweep of section 1090 is broad; within its reach comes any interest that might deter a public official from the most righteous and noble path of civil service possible." (*Id.* at p. 1333.)

The trial court concluded that Collins had a financial interest in the Reimbursement Agreement, Settlement Agreement, and WPA, because the evidence showed that RMC increased his pay while he was participating in making these contracts and working to gain their approval. The court considered Collins's interest in the Project Management Agreement a closer question because Collins's contract with RMC ended the day the CPUC approved the desalination project and there was no direct evidence showing that Collins expected a benefit from the contract's execution. The court nonetheless concluded that Collins had a cognizable interest in the agreement because he had been paid for his work and could have reasonably expected to receive more work.

Marina argues, without discussing the evidence relied upon by the trial court, that the court failed to follow this court's opinion in *Eden Township Healthcare Dist. v. Sutter Health* (2011) 202 Cal.App.4th 208. In *Eden Township*, this court affirmed summary judgment in a lawsuit claiming that agreements to purchase a hospital and to change its service role were void due to a conflict of interest by two of the people who played a role in negotiating the agreements. (*Id.* at pp. 212-213.) The court held that neither of these people had a financial interest in the contracts because no evidence showed that they would benefit directly or indirectly from them. (*Id.* at pp. 220-222, 228-229.) Although one of the two served as an unpaid chief executive officer (CEO) of a healthcare district and received a salary as CEO of a nonprofit that operated a hospital for the district, the court concluded that no nexus had been shown between the contracts and the person's compensation. (*Id.* at pp. 213-214, 221-222.)

17

Marina claims this case is analogous to *Eden Township* because Collins's contract with RMC ended on December 2, 2010, "well before the asserted final approval date" of the Project Management Agreement and the Credit-Line Agreement on January 11, 2011. But Marina's comparison to *Eden Township* is inapt because that case turned on the lack of nexus between the contracts and the relevant officials' compensation, not the timing of the contracts. (*Eden Township Healthcare Dist. v. Sutter Health*, *supra*, 202 Cal.App.4th at pp. 220-222, 228-229.) Here, as the trial court explained, the evidence revealed that Collins entered a contract with RMC under which he was to receive $220 per hour, up to a maximum of $25,000 in compensation, to provide consulting services for the desalination project. Over the next year, his contract with RMC was amended three times to ultimately increase his maximum compensation up to $160,000, at which point the contract ended. The trial court found that his contract meant that he stood to benefit financially from the Reimbursement Agreement, the Settlement Agreement, and the WPA so long as the project continued moving forward. Marina ignores these findings in simply asserting that Collins did not stand to gain *going forward* after January 11, 2011. We agree with the trial court that "[t]he contracts were not made in a day. Whether or not Collins'[s] financial interest continued until the contracts were finally executed, Collins had a financial interest in the contracts when he 'made' them. This is sufficient."

Marina's reliance on dicta in *People v. Vallerga* (1977) 67 Cal.App.3d 847 is also misplaced because that portion of the opinion addressed the hypothetical situation of whether a defendant, who was to be paid as a consultant regardless whether the relevant contract was executed, would violate Government Code section 1090 if he or she did nothing other than to provide consulting services before the contract's execution. (*Vallerga*, at pp. 867-868, fn. 5.) Again, we agree with the trial court when it pointed out that, unlike the defendant in *Vallerga*, Collins had a financial interest in the Reimbursement Agreement, Settlement Agreement, and WPA "when he participated in making the contracts and obtaining that approval, whether or not subsequent final approval was required."

18

*C. The Trial Court Did Not Review, Reverse, or Suspend the Operation of a CPUC Decision.*

Finally, Marina argues that this action is barred by various provisions of the Public Utilities Code, contentions that the trial court rejected in its summary judgment orders. By way of background, the CPUC issued two decisions (in August 2010 and December 2010) that approved the Settlement Agreement, the Reimbursement Agreement, and the WPA.[10] The commission found those three agreements to be reasonable, lawful, and in the public interest. The two CPUC decisions (Nos. 10-08-008 & 10-12-016, hereafter "the CPUC's approval decisions") have long since become final. (Pub. Util. Code, § 1731, subd. (b).)

After a dispute arose between the parties but before California-American filed its initial complaint, the CPUC issued a decision in July 2012 concluding, among other things, that it was "not reasonable to force" California-American to pursue the desalination project.[11] The commission closed the proceedings on the utility's original application related to desalination project. Marina asked the CPUC to determine that "project cessation" had occurred within the meaning of the WPA, but the commission declined to do so, stating that "the jurisdiction to resolve claims or causes of action under

---

**10** See *In the Matter of the Application of California-American Water Company (U210W) for an Order Authorizing the Transfer of Costs Incurred in 2008 for its Long-Term Water Supply Solution for the Monterey District to its Special Request 1 Surcharge Balance Account* (2010) Cal. P.U.C. Dec. No. 10-08-008 and *In the Matter of the Application of California-American Water Company (U210W) for a Certificate of Public Convenience and Necessity to Construct and Operate its Coastal Water Project to Resolve the Long-Term Water Supply Deficit in its Monterey District and to Recover All Present and Future Costs in Connection Therewith in Rates* (2010) Cal. P.U.C. Dec. No.10-12-016.

**11** See *In the Matter of the Application of California-American Water Company (U210W) for a Certificate of Public Convenience and Necessity to Construct and Operate its Coastal Water Project to Resolve the Long-Term Water Supply Deficit in its Monterey District and to Recover All Present and Future Costs in Connection Therewith in Rates* (2012) Cal. P.U.C. Dec. No.12-07-008.

the WPA *appears to lie with the judiciary* rather than the Commission."[12] (Italics added.)

Public Utilities Code section 1759, subdivision (a), provides: "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court." Review of decisions relating solely to water corporations shall only be by petition for writ of review in the Supreme Court. (Pub. Util. Code, § 1756, subd. (f).)

In its opening brief, Marina makes almost no mention of the CPUC's 2012 decision allowing California-American to abandon the desalination project and expressly rejecting Marina's request to rule on the parties' rights and duties under the WPA. The district recites at length uncontroversial caselaw about trial courts being barred against interfering with the CPUC's jurisdiction and argues that neither the trial court nor this court has jurisdiction to change the CPUC's determinations. (E.g., *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 914-915 [CPUC is state agency established by constitution, which confers broad authority on commission to regulate utilities].)

The Supreme Court has established a three-part test to determine whether an action is barred by Public Utilities Code section 1759's prohibition on a trial court

---

[12] By motion filed on February 9, 2016, California-American filed an amended request for judicial notice asking the court to judicially notice (1) Marina's comments filed on January 28, 2015, in CPUC proceeding No. A.13-05-017, (2) Marina's opening brief filed on May 16, 2014, in the same proceeding, and (3) Marina's response filed on July 15, 2015, in the same proceeding, arguing they are relevant to show Marina previously took the position that the trial court had jurisdiction to consider the RDP agreements. The utility also requests that the court take judicial notice of (4) order No. WR 95-10, issued by the State Water Resources Control Board on July 6, 1995, (5) order No. WR 2009-0060, issued by the State Water Resources Control Board on October 20, 2009, (6) Cal. P.U.C. Dec. No. 12-07-008, cited in the preceding footnote, and (7) Cal. P.U.C. Dec. No.10-12-016, cited in footnote 11. The unopposed request is granted, and the court takes judicial notice of all seven documents.

reviewing any order or decision of the CPUC: " ' "(1) whether the commission had the authority to adopt a regulatory policy; (2) whether the commission had exercised that authority; and (3) whether the superior court action would hinder or interfere with the commission's exercise of regulatory authority." ' " (*Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 236.) In applying this test, the trial court concluded (1) that no party had thoroughly explained the scope of the CUPC's authority to review contracts before approving them but that the caselaw suggested the commission did not have the authority to validate the RDP agreements, (2) that the CPUC approved the agreements by determining they were in compliance with the law but did not address whether they violated Government Code section 1090 or analyze whether they were "valid," and (3) that judicial action would not interfere with the commission's exercise of its regulatory authority because the commission already had determined that the project may be abandoned and left the question of contractual liability to the courts.

Marina acknowledges the three-part test but does not address the trial court's conclusions in its opening brief. We question whether the test even applies in this case, because the test is aimed at whether a plaintiff may sue a public utility for damages under Public Utilities Code section 2106, which was not an issue here. (*San Diego Gas & Electric Co. v. Superior Court*, *supra*, 13 Cal.4th at pp. 916-917; *Sarale v. Pacific Gas & Electric Co.*, *supra*, 189 Cal.App.4th at p. 236.) But even assuming that the test applies, it has not been met. Regarding the first prong of the test—whether the CPUC had the authority to act in this situation—while Marina argues that the RDP agreements were "duly presented" to the CPUC, it does not identify any "regulatory policy" the CPUC had the authority to adopt or address whether the commission had jurisdiction to resolve the conflict presented to the trial court. (*Sarale*, at p. 236.) Regarding the second prong— whether the CPUC exercised its authority—Marina contends that the trial court lacked authority to change the CPUC's determinations that the agreements were reasonable, lawful, and in the public interest, but this omits the key fact that the CPUC never addressed whether the agreements violated Government Code section 1090. And regarding the third prong—whether this action would interfere with the CPUC's

21

regulatory authority—Marina obliquely refers to the CPUC's decision that the desalination project could be abandoned and argues that the decision "contemplated an ongoing exercise of jurisdiction." True, the CPUC's order accepting California-American's withdrawal from the desalination project also stated that the utility "shall file a new application to the extent that there are disputed costs related to the Reimbursement Agreement or the Line of Credit under the Water Purchase Agreement." But again, there is no indication that the CPUC ever ruled on whether the RDP agreements violated Government Code section 1090 or plans to do so in the future, and we thus reject Marina's arguments based on the Public Utilities Code.

## III.
### DISPOSITION

Marina's request for judicial notice, filed on January 20, 2016, is denied.

California-American's request for judicial notice, filed on February 9, 2016, is granted.

The judgment is affirmed.

Appeal Nos. A146166 and A146405 shall remain stayed until 30 days after the issuance of the remittitur in this case. The opening briefs in those stayed cases shall be due 40 days after the issuance of the remittitur in this appeal.

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Banke, J.


*California-American Water Company v. Marina Coast Water District* (A145604)

23

Trial Court:                          San Francisco County Superior Court

Trial Judge:                          Honorable Curtis E.A. Karnow

Counsel for Appellant                 James L. Markman, B. Tilden Kim and Kyle H.
Marina Coast Water District:          Brochard
                                      Richards, Watson & Gershon

                                      Mark Fogelman and Ruth S. Muzzin
                                      Friedman & Springwater


Counsel for Respondent                Robert R. Moore, Michael J. Betz and Alexander
California-American Water              J. Doherty
Company:                              Allen Matkins Leck Gamble Mallory & Natsis


Counsel for Respondent                Office of Monterey County Counsel
Monterey County Water                 Charles J. McKee
Resources Agency:                     County Counsel

                                      Susan K. Blitch
                                      Senior Deputy County Counsel

                                      Mark A. Wasser
                                      Law Offices of Mark A. Wasser