Filed 11/30/16 Unmodified version attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ZF MICRO DEVICES, INC. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> TAT CAPITAL PARTNERS, LTD., et al., <br><br> Defendants and Respondents. | H040776 <br> (Santa Clara County <br> Super. Ct. No. 109CV134970) <br><br><br> **ORDER MODIFYING OPINION** <br><br><br> **NO CHANGE IN THE JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on November 3, 2016, be modified as follows:

1. On page 8, third full paragraph, first sentence, delete "because of the delayed accrual of the statute of limitations" and replace it with: "because the accrual of the claim was delayed due to ZF's having failed, in the exercise of reasonable diligence, to discover the facts underlying the claim until a date less than four years before the cross-complaint's filing."

2. On page 12, first full paragraph, fourth sentence, change "noted" to "notes"

3. On page 17, second full paragraph, third sentence, delete "because the alleged conduct resulting in harm occurred prior to February 28, 2002, when ZF Devices ceased operations" and replace it with: "i.e., on February 28, 2002, when the harm to ZF Devices occurred."

4. On page 17, third full paragraph, fourth sentence, change "from" to "of."

5.  On page 21, first full paragraph, third sentence, insert "the" after "from" and before "plaintiff."

6.  On page 26, first full paragraph, first sentence, change "redefining" to "redefined."

7.  On page 27, first full paragraph, first sentence, change "authority" to "authorities."

8.  On page 28, third full paragraph, second sentence, insert "of" after "favor" and before "Putney."

There is no change in the judgment.

Dated:                                                     _____
                                                           WALSH, J. *



                                                           _____
                                                           RUSHING, P.J.



                                                           _____
                                                           PREMO, J.



*ZF Micro Devices, Inc., et al. v. TAT Capital Partners, Ltd., et al.*
H040776

---

*Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                       Santa Clara County Superior Court
                                                   Superior Court No.: 109CV134970


Trial Judge:                                       The Honorable William J. Monahan


Attorneys for Plaintiffs and Appellants            Jeffrey A. Berger
ZF MICRO DEVICES, INC. et al.:                     BERGER LAW OFFICES

                                                   Scott J. Spolin
                                                   C. Brent Parker
                                                   SPOLIN COHEN MAINZER


Attorneys for Defendants and Respondents           Joseph Nicholas Demko
TAT CAPITAL PARTNERS, LTD., et al.:                Matthew Scott Kenefick
                                                   JEFFER, MANGELS, BUTLER &
                                                   MARMARO LLP


*ZF Micro Devices, Inc., et al. v. TAT Capital Partners, Ltd., et al.*
H040776

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ZF MICRO DEVICES, INC. et al., | H040776 |
| | (Santa Clara County |
| Plaintiffs and Appellants, | Super. Ct. No. 109CV134970) |
| v. | |
| TAT CAPITAL PARTNERS, LTD., et al., | |
| Defendants and Respondents. | |

This is the third chapter of Silicon Valley litigation spanning more than 14 years involving a microchip company, ZF Micro Devices, Inc. (ZF Devices), and its successor, ZF Micro Solutions, Inc. (ZF Solutions).[1] The successor company sued National Semiconductor Corporation (NSC)—ZF Devices' foundry—and obtained a $20 million settlement in 2004. Afterwards, venture capital firms that had invested in ZF Devices, including TAT Capital Partners, Ltd. (TAT), sued ZF Solutions and others for fraudulent transfer of the NSC settlement proceeds. The investors prevailed at trial in 2010 and this court affirmed the judgment on appeal.

In the instant third lawsuit, the ZF Entities alleged in a complaint that Mark Putney, a TAT representative who was a ZF Devices board member, breached fiduciary duties owed to ZF Devices. The ZF Entities also alleged in a separate cross-complaint— originally filed in the second lawsuit but later severed and consolidated in this third

---

[1] Hereafter, when we refer collectively to ZF Devices and ZF Solutions, we will do so with the terms ZF Entities, or simply ZF. Although ZF Devices and ZF Solutions are two separate entities, when we refer to them collectively as ZF, we treat the name as a singular noun.

suit—that TAT breached its fiduciary duties to ZF Devices. This third lawsuit went to trial in December 2013. TAT and Putney prevailed, and the ZF Entities appealed.

At trial, TAT argued that ZF's claim (accruing in February 2002) was barred by the applicable four-year statute of limitations because ZF's cross-complaint was not filed until March 2009. ZF contended that the cross-complaint was timely because the statute of limitations was tolled by the filing of TAT's lawsuit in February 2005. TAT replied that this tolling doctrine applied only to compulsory cross-complaints; because the ZF cross-complaint was permissive (unrelated to the claims alleged in TAT's complaint), its filing did not relate back to the date the complaint was filed. The trial court, acknowledging that authors of major California treatises had expressed conflicting views on the subject and aptly recognizing the issue was "ripe for appeal," held the tolling doctrine applied only to compulsory cross-complaints. Because the court also found that ZF's cross-complaint was permissive, it allowed TAT to submit its statute of limitations defense at trial. The jury found that ZF's cross-complaint was time-barred.

We agree that ZF's cross-complaint was permissive but conclude the tolling doctrine applies to both permissive and compulsory cross-complaints. Although more recent intermediate appellate court decisions have suggested the tolling doctrine applies only to related (compulsory) cross-complaints, there is controlling Supreme Court authority from 1922 and 1946 that the tolling doctrine applies to the defendant's related and unrelated cross-claims against the plaintiff.

Because the tolling doctrine applied to ZF's permissive cross-complaint, its filing related back to the date TAT filed its complaint (February 2005). The cross-complaint having been timely filed, the court erred in submitting TAT's statute of limitations defense to the jury. Accordingly, we will reverse the judgment entered on ZF's cross-complaint against TAT and remand to the court below for further proceedings.[2]

_____

[2] ZF made arguments in its appellate briefs other than its contention that the trial court erred in its submission of TAT's statute of limitations defense on the cross-

2

PROCEDURAL BACKGROUND[3]

*I.    Introduction*

Given the factual and procedural complexity concerning this matter, we provide a brief summary at the outset.

David Feldman founded ZF Devices in July 1995.  He was at all times its chief executive officer.  ZF Devices was in the business of designing and selling embedded microchips.  The company contracted in 1999 with NSC to design and manufacture ZF Devices' "ZFx86" microchip.

TAT is a Swiss private equity firm that invests in startup high technology companies.  Between 1997 and 1999, TAT infused ZF Devices with significant capital by investing approximately $9.8 million into the company which resulted in TAT holding 21.7 percent of the outstanding shares of ZF Devices.  TAT held a seat on the board of

---

complaint to the jury based upon its finding that the tolling doctrine was inapplicable.  ZF contended the trial court (1) prejudicially erred in allowing evidence to be introduced concerning the judgment entered against ZF Solutions and others in the second lawsuit brought by TAT; and (2) committed error with respect to an amended jury instruction and an amended special verdict it gave regarding the accrual of the statute of limitations.  It was unclear from ZF's briefing whether these additional arguments were advanced in connection with the trial of the cross-complaint against TAT, only, or were also made concerning the trial of the complaint against Putney.  At oral argument, ZF's counsel confirmed that ZF was not assigning error with respect to the special verdict entered in favor of Putney.  Accordingly, our reversal of the judgment as to the first amended cross-complaint against TAT will not affect the jury finding in favor of Putney on the second amended complaint.

[3] Some of the procedural matters and background facts are taken from our unpublished decision in the prior TAT proceeding (*TAT Capital Partners LTD v. Feldman* (Jul. 2, 2012, H035968 [nonpub. opn.].)  (See *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 172, fn. 9.)  Pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a), we take judicial notice of that opinion and of the record submitted in connection with that proceeding.  (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2 [judicial notice of court materials appropriate to "help complete the context of this case"].)

directors of ZF Devices, and TAT's representatives on the board were Thomas Egolf and, later, Mark Putney.  Putney resigned from the board in November 2001.

Sands Brothers Venture Capital L.L.C. (Sands Venture) and SB New Paradigm Associates LLC (SB) were additional investors of ZF Devices; collectively, Sands Venture and SB (hereafter, collectively, Sands) owned 10.4 percent of ZF Devices' stock. Sands' representative on ZF Devices' board of directors was Gary Kennedy, who resigned that position in November 2001.

On February 28, 2002, Kennedy—who had provided a $1 million secured bridge loan to ZF Devices in 2001 on which the company later defaulted—foreclosed on the assets of ZF Devices.  This marked the end of ZF Devices' operations.  At or about the same time, Feldman formed ZF Solutions for the purpose of acquiring ZF Devices' assets.  Feldman and his sister, Marsha Armstrong, lent ZF Solutions approximately $400,000 for it to acquire from Kennedy the assets of ZF Devices he had obtained by foreclosing on his loan.  Included among the assets ZF Solutions acquired was ZF Devices' microchip production agreement with NSC.

II.    *The NSC Lawsuit*

On April 25, 2002, ZF Solutions sued NSC for damages, as Santa Clara County Superior Court case number 102CV807339 (the NSC lawsuit).  The lawsuit was based upon claims that, among other things, NSC failed to produce ZF Devices' "ZFx86" microchips as agreed under their contract.  While the case was ongoing, NSC contended that ZF Solutions had no standing to assert tort claims against NSC because those claims belonged to the shareholders of ZF Devices.  In responding to this contention, Feldman produced a document entitled "Assignment of Assets," purporting to assign ZF Devices' intellectual property, including any claims against NSC, from ZF Devices to ZF Solutions; the document bore no date of signature but reflected March 1, 2002, as its effective date.  NSC challenged the legal effectiveness of the assignment.  In April 2004—while the NSC lawsuit was still pending and the issue of ZF Solutions' standing

4

was still outstanding—Feldman solicited and obtained TAT's execution of an April 2004 "Consent Agreement" (discussed, *post*).

The case proceeded to trial, and a jury awarded ZF Solutions damages of $29 million. The trial judge vacated the verdict, but the case was later settled in or about December 2004 for $20 million.

### III. *The TAT Lawsuit*

On February 14, 2005, two ZF Devices investors, TAT and Sands Venture, brought suit against the ZF Entities and Feldman, as Santa Clara County Superior Court case number CV035531 (the TAT lawsuit). TAT and Sands Venture alleged jointly claims for dissolution of ZF Devices, breach of fiduciary duty (against Feldman), fraudulent transfer, and for an accounting. Two separate complaints were later filed by TAT and Sands. A number of individuals who were ZF Solutions shareholders (including Feldman and his sister, Armstrong), identified collectively as the "transferee defendants," were named in the separate complaints.

Generally speaking, TAT's and Sands' claims arose out of their respective contentions that, as ZF Devices shareholders, they were entitled to receive pro rata distributions of the proceeds of the $20 million settlement of the NSC lawsuit. TAT and Sands based their claims substantially upon the April 2004 "Consent Agreement," which had been solicited by Feldman in response to NSC's assertion during the NSC lawsuit that ZF Solutions had no standing to assert ZF Devices' tort claims. Under the Consent Agreement, TAT and Sands ratified after-the-fact Feldman's transfer of ZF Devices' legal rights against NSC to ZF Solutions. TAT and Sands claimed that, in exchange for signing the Consent Agreement, they were promised that, as ZF Devices shareholders, they would receive pro-rata distributions of any recovery obtained in the NSC lawsuit. TAT and Sands alleged that ZF Solutions breached the Consent Agreement by distributing all net NSC lawsuit settlement proceeds to itself and to the transferee

5

defendants (ZF Solutions' shareholders).  TAT and Sands alleged further that the disposition of the settlement proceeds constituted a fraudulent transfer of assets.

On March 11, 2009, the court granted ZF's motion for leave to file a cross-complaint against TAT.  ZF filed that cross-complaint on March 18, 2009 (the ZF cross-complaint) alleging that TAT (through its partners and agents, Egolf and Putney), as TAT's designated members of ZF Devices' board of directors, breached fiduciary duties owed to the ZF Entities.

The TAT lawsuit was tried in late 2009-early 2010.  The trial judge considered various pretrial matters, including TAT's motion to sever the ZF cross-complaint.  On December 21, 2009, the court granted that motion, ordering the ZF cross-complaint severed and consolidated with another pending Superior Court action that had been filed by the ZF Entities against TAT, Putney, and Egolf, namely, the instant case (case number 109CV134970; hereafter, the ZF lawsuit).

The TAT lawsuit proceeded to a three-phase trial.  In the first phase, the court found that there were contracts that existed between TAT and ZF Solutions and Sands and ZF Solutions, and that they were sufficiently definite to be enforceable.  In the second phase, a jury found in favor of TAT and Sands on their respective breach of contract claims, and it awarded damages to them.  In the third phase, after hearing additional testimony, the court found in favor of TAT and Sands on their fraudulent transfer claims against the transferring defendants.  A judgment was entered that included awards of damages (including interest) of $4,460,447 to TAT and $2,135,859 to Sands.  Substantial monetary judgments of varying amounts were also entered against the 22 transferee defendants, including Feldman, against whom the judgment amount was $2,220,271.  ZF Solutions and 20 of the 22 transferee defendants appealed from the judgment.  In an unpublished decision filed July 2, 2012, we affirmed the judgment.

6

*IV.     The ZF Lawsuit*

The ZF lawsuit was filed on February 17, 2009.  In their complaint, the ZF Entities alleged claims against TAT, Putney, and Egolf for breach of fiduciary duty (among other claims).  After being granted leave in the TAT lawsuit to file a cross-complaint against TAT, ZF amended the complaint in the ZF lawsuit, removing TAT as a defendant.  (But as stated, *ante*, that cross-complaint was subsequently ordered severed and consolidated with the ZF lawsuit.)  ZF later amended the complaint again to remove Egolf as a defendant.

The ZF lawsuit proceeded to trial in November 2013 before a different judge than the trial judge in the TAT lawsuit.  The operative pleadings were the second amended complaint for breach of fiduciary duty against Putney, and the first amended cross-complaint for breach of fiduciary duty against TAT.  During in limine motions, the trial court dismissed ZF Devices as plaintiff and cross-complainant, concluding that all of its rights had been assigned to ZF Solutions.[4]  Also during pretrial proceedings, TAT and Putney made a motion to bifurcate the trial and to first try their statute of limitations affirmative defenses.  As a parallel motion, ZF sought an order in limine precluding TAT and Putney from asserting a statute of limitations defense.  ZF asserted, among other things, that the breach of fiduciary duty claim was timely, even disregarding their position that accrual was delayed because they did not discover the facts supporting the claim for a number of years.  ZF argued that (1) the claim was governed by a four-year statute, (2) the TAT complaint in the TAT lawsuit was filed within that four-year period

---

[4] The ZF Entities on appeal do not challenge the trial court's pretrial dismissal of ZF Devices, and accordingly any potential challenge is abandoned.  (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 (*Tiernan*).)  Therefore, even though ZF Devices is, in essence, a nonparty to this appeal, for convenience, we will refer to the ZF Entities (ZF) as the parties that asserted the breach of fiduciary duty claims, brought this appeal, and are making the appellate arguments in this case.

7

on February 14, 2005, and (3) the statute of limitations for filing the ZF cross-complaint was tolled upon the filing of the TAT complaint.

The trial court denied ZF's motion in limine and granted TAT's motion to bifurcate. In later pretrial proceedings, the court tentatively ruled that (1) the statute of limitations was not tolled by the filing of the TAT complaint on February 14, 2005, and (2), thus, the operative date to determine whether the ZF cross-complaint was time-barred was its filing date on March 18, 2009. The trial court confirmed those conclusions later during the bifurcated trial.[5]

The trial court ordered that TAT and Putney initially present evidence supporting their statute of limitations defense, followed by ZF's presenting evidence of delayed accrual of the statute. The parties stipulated that for purposes of the statute of limitations, the harm to ZF Devices occurred on February 28, 2002—the date that Kennedy, as secured lender, foreclosed on ZF Devices' assets and the company ceased doing business. And the trial court determined that ZF's breach of fiduciary duty claim was subject to a four-year statute of limitations. (See Code Civ. Proc., § 343; *Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606.)[6]

Accordingly, in the first phase of the bifurcated trial (as it pertained to the cross-complaint), the jury was required to determine (1) whether the ZF cross-complaint on its face was time-barred because it was filed on March 18, 2009, more than four years after ZF's breach of fiduciary duty claim accrued; and (2) if so, whether ZF's claim was nonetheless timely because of the delayed accrual of the statute of limitations. To

---

[5] After TAT rested, ZF made a motion for nonsuit, arguing that the filing of the TAT complaint tolled the statute of limitations on the ZF cross-complaint. After substantial briefing and argument, the court denied the motion, again ruling that the filing of the TAT complaint in February 2005 did not toll the statute of limitations for the filing of the ZF cross-complaint.

[6] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

8

establish delayed accrual, ZF had to show that (1) it did not discover, and did not know of the facts that would have caused a reasonable person to suspect, the facts supporting its claim against TAT at the time the statute otherwise commenced running, and (2) the discovery date was on or after March 18, 2005 (i.e., less than four years before the cross-complaint was filed).  (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.)

On December 17, 2013, the jury returned a verdict in favor of TAT and Putney.  In separate special verdict forms, the jury found that (1) the ZF Entities (or either of them) had knowledge of any breaches of fiduciary duty committed by TAT before March 18, 2005 (i.e., more than four years before the filing of ZF's cross-complaint); and (2) the ZF Entities (or either of them) had knowledge of any breaches of fiduciary duty committed by Putney before February 17, 2005 (i.e., more than four years before the filing of ZF's complaint).  A judgment was entered on the verdict on January 10, 2014.  The court concluded, based upon the jury's findings, that ZF's claims were time-barred and that TAT and Putney were therefore entitled to judgment in their favor on the first amended cross-complaint and second amended complaint, respectively.

DISCUSSION

### I.      *Applicability of Tolling Doctrine to ZF Cross-Complaint*

ZF contends the trial court erred in concluding that (1) the claims in ZF's cross-complaint were unrelated to those asserted by TAT in its complaint and the cross-complaint was therefore permissive, and (2) the filing of the TAT complaint, therefore, did not toll the statute of limitations for the ZF cross-complaint because the tolling doctrine applies only to compulsory cross-complaints.  Therefore, we determine first whether the ZF cross-complaint was permissive (as concluded by the trial court).  Concluding that the trial court correctly so held, we then address whether the tolling doctrine applies to permissive cross-complaints.  "The application of the statute of limitations on undisputed facts is a purely legal question [citation]; accordingly, we

9

review the lower courts' rulings de novo." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

### A. The ZF Cross-Complaint Was Permissive

#### 1. *Issue Was Not Previously Decided*

Citing to different parts of the record, the parties argue that there was a prior, binding determination that the ZF cross-complaint was compulsory (as argued by ZF) or permissive (as argued by TAT). We address their respective positions in turn.

##### a. ZF's compulsory cross-complaint position

ZF contends that when the court in the TAT lawsuit granted the ZF Entities leave to file their cross-complaint, it adjudicated that the pleading was compulsory. On March 11, 2009, the court granted ZF's motion, concluding that "[t]he proposed Cross-Complaint arises out of the transactions, circumstances, and occurrences that are at issue in the related actions and is a mandatory cross[-]complaint." In its opening brief, ZF argues in a heading that "[t]he cross-complaint has been ruled mandatory" (initial capitalization and emphasis omitted). Under that heading, beyond stating that there was never a subsequent order "nullifying [the court's] March 11, 2009 Order," ZF offers little argument in support of its position that this order constitutes a conclusive adjudication that the ZF cross-complaint was compulsory. And it does not address the subject in its reply brief at all.

Notwithstanding ZF's failure to develop its argument, we *surmise* that its position is that, based upon the court's order of March 11, 2009, TAT is barred by collateral estoppel from asserting that the ZF cross-complaint was permissive. " 'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943 (*Pacific Lumber*).) There are five threshold requirements for collateral estoppel. " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in

10

the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' " (*Ibid.*) The burden of proving each of these elements of collateral estoppel rests with the party asserting it. (*Ibid.*; see also *Santa Clara Valley Transp. Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1311.)

As noted, ZF has not explained, either with argument or legal authority, the basis for its contention that the March 11, 2009 order granting leave to file the ZF cross-complaint conclusively adjudicated that the cross-complaint was compulsory. And ZF does not even mention, let alone address and meet its burden of establishing, that the five requisite elements of collateral estoppel apply in this instance. (See *Pacific Lumber*, *supra*, 37 Cal.4th at p. 943.) An appellate court has no obligation to "develop the appellants' arguments for them." (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1; see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [conclusory argument presentation in brief was inadequate and appellate court deemed issue abandoned].)

ZF argues further that TAT is judicially estopped from asserting that the ZF cross-complaint is permissive. It argues that on October 23, 2013, TAT served a document captioned "Notice of Related Cases" in the instant ZF lawsuit, claiming that the ZF lawsuit was related to the TAT lawsuit. "The doctrine of judicial estoppel applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position . . . ; (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citation.]" (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 85, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) Here, in the Notice of Related Cases,

11

TAT *expressly stated* that it disputed the ZF cross-complaint was compulsory: "[ZF] Solutions has argued (*and TAT disputes*) that its Cross-Complaint [filed in the TAT lawsuit] . . . was compulsory." (Italics added.) Thus, because TAT did not take two positions (i.e., it did not previously assert that the ZF cross-complaint was compulsory), it is not judicially estopped from claiming the cross-complaint is permissive.

              b.      TAT's permissive cross-complaint position

TAT makes the parallel contention that ZF is collaterally estopped from asserting that its cross-complaint was compulsory. TAT asserts that the trial court's December 21, 2009 order severing the ZF cross-complaint and consolidating it with the ZF lawsuit, coupled with this court's subsequent affirmance of the judgment in the TAT lawsuit, constituted a conclusive determination that the cross-complaint was permissive. In making its severance/consolidation order, the trial court held that the claim asserted in the ZF cross-complaint and the claims alleged in the TAT lawsuit were not related "at all." And TAT correctly noted that in the prior appeal in the TAT lawsuit, the appellants (ZF Solutions and the individual "transferring defendants") challenged unsuccessfully the trial court's order severing the ZF cross-complaint and consolidating it in the within action.

Clearly, the trial judge in the TAT lawsuit expressed the view that the respective claims in the TAT complaint and the ZF cross-complaint were unrelated. What is less clear is whether this issue of the relatedness of the claims was actually litigated. Further, it is unclear whether a determination that the claims were not related—in the context of establishing whether the cross-complaint was compulsory or permissive—was necessary to the court's decision. (See *Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430, 1451 [rejecting collateral estoppel contention concerning finding by administrative law judge, concluding the supposed finding was "not necessary to the ALJ's decision"].) Here, the trial court determined whether separate trials of TAT's claims and ZF's claim would be "in furtherance of convenience or to avoid prejudice,

12

or . . . [would] be conducive to expedition and economy." (§ 1048, subd. (b).) The court may have resolved that issue without having necessarily found that the cross-complaint was permissive, i.e., that ZF's claims were unrelated to TAT's claims. Moreover, in affirming the judgment, we did not specifically address whether the ZF cross-complaint was compulsory or permissive. Rather, we held simply that the trial court did not abuse its discretion in ruling, under section 1048, subdivision (b), that the ZF cross-complaint should be severed and tried separately from TAT's claims. We therefore conclude that TAT, like ZF, has failed to meet its burden of proving each of the five requisite elements of collateral estoppel. (See *Pacific Lumber*, *supra*, 37 Cal.4th at p. 943.)

### 2. *The Claims Were Not Logically Related*

Under California's compulsory cross-complaint statute, a party is prohibited from asserting a claim if, at the time the party answered a complaint in a prior suit, it failed to allege in a cross-complaint any related cause of action against the plaintiff. (§ 426.30, subd. (a) (§ 426.30(a).) The phrase "related cause of action" is defined as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (§ 426.10, subd. (c).) Additionally, in order for a cross-complaint to be compulsory, the related cause of action must have existed when the answer was served. (§ 426.30(a).) If it was not, the failure to assert it is not a bar under the statute. (*Crocker Nat. Bank v. Emerald* (1990) 221 Cal.App.3d 852, 864 (*Crocker Nat. Bank*).)

Few California courts have interpreted the relatedness requirement of the compulsory cross-complaint statute.[7] But this court—relying on an opinion from our

_____

[7] Indeed, we are aware of only a handful of published decisions since section 426.30's enactment in 1971 specifically adjudicating whether a cross-complaint was compulsory or permissive. The courts in only three of those cases held that the cross-complaint was permissive. But the decision in each of those cases was based upon the fact that the defendant's claim against the plaintiff did not exist when the answer to the complaint was served, not on the conclusion that the cross-claim was logically unrelated to the claim in the complaint. (See *E. L. White, Inc. v. City of Huntington Beach* (1978)

13

colleagues of the Fourth District Court of Appeal (see *Currie Medical Specialties, Inc. v. Bowen* (1982) 136 Cal.App.3d 774 (*Currie Medical*))—has held there must be a logical relationship between the prior complaint and the cross-complaint. As we explained: "The *Currie Medical* court, finding guidance in federal decisions construing the compulsory counterclaim statute, Federal Rules of Civil Procedure, rule 13(a) . . . , held that the relatedness standard 'requires "not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them." [Citation.] This logical relationship approach is the majority rule among the federal courts [citation].' " (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 960 (*Align Technology*), quoting *Currie Medical*, *supra*, at p. 777.) In *Currie Medical*, the court emphasized that, in concluding there was a logical relationship between the claims that required assertion of the later claim as a compulsory cross-complaint, the claims "involve[d] common issues of law and fact," an "overlap of issues," and a common transaction. (*Currie Medical*, at p. 777.)

ZF alleged in the cross-complaint that TAT, through its partners and agents, Putney and Egolf (both of whom were at times members of ZF Devices' board), breached its fiduciary duties to ZF Devices. Generally, it was alleged that TAT (1) communicated to potential ZF Devices investors a lack of confidence in the company's management in an attempt to manipulate the potential investors and thereby advance TAT's personal agenda; (2) attempted to effect a sale of ZF Devices without the board's knowledge or approval, thereby communicating that the company was in a weak position; and (3) offered ZF Devices shares to potential investors at a discounted price, without board approval, in exchange for the potential investors' assistance in TAT's taking control of the board. More specifically, ZF alleged breaches of fiduciary duty in connection with matters spanning from 1998 (involving a Switzerland presentation by Feldman in which

21 Cal.3d 497, 505-506; *Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 56-59; *Crocker Nat. Bank*, *supra*, 221 Cal.App.3d at p. 864.)

14

he disclosed ZF Devices' confidential information to investors of TAT and to Walter Furter, who, unbeknownst to Feldman, was an executive of a ZF Devices competitor), through 2001 (involving TAT's contacts with a potential investor, Thomas Wiesel Partners). ZF alleged that ZF Devices sustained resulting damages, because it was unable to secure necessary financing, suffered from internal dissension, and was ultimately unable to succeed and defaulted on its loan to Kennedy in February 2002.

The ZF cross-complaint concerned the management and operation of ZF Devices, including alleged actions by Putney and Egolf, as directors of ZF Devices, taken on behalf of TAT between 1998 and 2001 that materially impacted the success of the company. In contrast, the claims in the TAT complaint were against the successor entity, ZF Solutions, not ZF Devices, concerning matters that occurred in or after 2004, more than two years after ZF Devices' failure—namely, the Consent Agreement entered into in 2004, the settlement of the NSC lawsuit in December 2004, and the breach of the Consent Agreement through disbursement of the NSC settlement proceeds thereafter. TAT's claims in no way concerned (1) the operation of ZF Devices; (2) alleged attempts to oust its management; (3) the solicitation of potential investors for ZF Devices; (4) the reasons that such potential investors chose not to invest in the company; or (5) the circumstances surrounding the demise of ZF Devices in February 2002. Thus, although claims were loosely "related"—in the sense that they involved some of the same parties and concerned, directly or indirectly, the failure of ZF Devices—ZF's cross-complaint was not logically related to TAT's claim: The trial of the claims did not involve a "duplication of time and effort . . . [based upon there being] factual or legal issues relevant to both claims." (*Align Technology*, *supra*, 179 Cal.App.4th at p. 960.)

Our conclusion that the ZF cross-complaint is not logically related to TAT's claims is underscored by contrasting the circumstances presented here with those found in cases in which courts determined the cross-complaints *were* compulsory. For example, in *Currie Medical*, *supra*, 136 Cal.App.3d 774, the plaintiff (Currie) and the defendant

15

(Bowen) entered into an oral contract in which Currie agreed to cease its competing business and to act as a distributor for Bowen in selling labels to hospitals. (*Id.* at p. 776.) In a federal action, Bowen sued Currie for unfair competition and violations of the Lanham Act (15 U.S.C. § 1051 et seq.), claiming that Currie had obtained Bowen's trade secrets while the distribution contract existed, and, after its termination, unfairly competed with Bowen. (*Currie Medical*, at p. 776.) After that case was dismissed, Currie sued Bowen in state court claiming that Bowen breached the distributorship contract and fraudulently induced Currie to enter into it. (*Ibid.*) The appellate court affirmed the granting of Bowen's summary judgment motion. (*Ibid.*) It agreed with the trial court that Currie's claims were barred under the compulsory cross-complaint statute because they were logically related to Bowen's federal claims, in that both claims concerned the parties' relationship under, and performance of, the distributorship contract. (*Id.* at p. 777.)

In contrast to *Currie Medical*, the claims in the TAT complaint and the claims in the ZF cross-complaint neither involved the same relationship nor the operation of the same enterprise. Stated broadly, the claims in the ZF cross-complaint concerned the operation of, and alleged fiduciary duty breaches of, a director of ZF Devices (TAT) in or prior to 2002. In contrast, TAT's claims concerned a different entity's (ZF Solutions') prosecution of a lawsuit against NSC and the distribution of the settlement proceeds of that lawsuit in alleged breach of a 2004 agreement between TAT and ZF Solutions. (Cf. *Align Technology*, *supra*, 179 Cal.App.4th at pp. 949, 962-963, 967-968 [plaintiff's breach of contract and conversion claims against former employee were logically related to latter's cross-complaint in prior wrongful termination action]; *Saunders v. New Capital for Small Businesses, Inc.* (1964) 231 Cal.App.2d 324, 338 [counterclaim held compulsory because it and prior claim arose out of same fiduciary relationship between the parties].)

16

Therefore, although we construe the relatedness requirement of section 426.30(a) broadly to effectuate its purpose to avoid a multiplicity of actions (*Align Technology*, *supra*, 179 Cal.App.4th at p. 960), we conclude that ZF's cross-complaint is permissive because the claim is not one that "arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which [TAT] allege[d] in [its] complaint." (§ 426.10, subd. (c).)

        B.     The ZF Cross-Complaint Was Not Time-Barred

        *1.     Introduction*

Having concluded that the ZF cross-complaint was permissive, we address whether the trial court properly held that the tolling doctrine was inapplicable and that therefore, the cross-complaint's filing date did not relate back to the date TAT filed its complaint. If the tolling doctrine applied to ZF's cross-complaint, then it would be deemed filed when TAT filed its complaint (February 14, 2005). In that case, the cross-complaint was asserted less than four years after the claim arose, because the alleged conduct resulting in harm occurred prior to February 28, 2002, when ZF Devices ceased operations. (See § 343; *Thomson*, *supra*, 198 Cal.App.4th at p. 606.) Accordingly, if the tolling doctrine applied to the ZF cross-complaint, the court erred by ordering a bifurcated trial on TAT's statute of limitations defense to that cross-complaint.

The applicability of the tolling doctrine to permissive cross-complaints is not free of doubt. The author of one well-respected treatise states that the tolling doctrine applies broadly to all cross-complaints: "The statute is a bar to the defendant's affirmative claim only if the period has already run when the complaint is filed. The filing of the complaint suspends the statute during the pendency of the action, and the defendant may set up his or her claim by appropriate pleading at any time. [Citations.]" (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 448, p. 571.) But authors from two well-respected practice guides state that the tolling doctrine is limited to compulsory cross-complaints: "A cross-complaint that is *subject-matter related* to the plaintiff's complaint (i.e., a compulsory

17

cross-complaint) 'relates back' to when the action was commenced for statute of limitations purposes. [Citations.]" (Weil and Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 6:592, p. 6–167, original italics (Weil and Brown); see also Rylaarsdam and Turner, Cal. Practice Guide: Civil Procedure Before Trial Statutes of Limitations (The Rutter Group 2016) ¶ 8:240, p. 8–30 (Rylaarsdam and Turner) ["the filing of the original complaint 'tolls' or 'suspends' the statute of limitations as to any cross-complaint against plaintiff *arising out of the same 'contract, transaction, matter, happening or accident'* upon which plaintiff's action is brought; i.e., a compulsory cross-complaint"].) And the authors of the latter practice guide have noted that whether the tolling doctrine applies to permissive cross-complaints is an open question. (See Rylaarsdam and Turner, *supra*, at ¶ 8:250, p. 8–31.)

The parties have failed to identify any post-1971 published decisions—and we are unaware of any—in which an appellate court has affirmatively held that the tolling doctrine either does or does not apply to permissive cross-complaints. Prior to 1971, the statutory scheme provided for two, rather distinct, cross-claim pleadings, the counterclaim and the cross-complaint. The cross-complaint was previously more narrowly defined and the compulsory cross-complaint statute did not exist. Because the tolling doctrine originated in pre-1971 case law, we necessarily make a brief detour to outline prior law concerning counterclaims and cross-complaints to place these cases in context with the present cross-complaint statute.

### 2. *Former Counterclaim and Cross-Complaint Statutes*

Under former section 438, the counterclaim was a claim by the defendant against the plaintiff that tended to diminish or defeat the plaintiff's recovery. (*Terry Trading Corp. v. Barsky* (1930) 210 Cal. 428, 435 (*Terry Trading*).) The statute originally provided that the counterclaim was restricted to claims arising out of the contract or transaction set forth in the complaint. (Howell, *Counterclaims and Cross-Complaints in California* (1936) 10 So.Cal. L.Rev. 415, 418 (Howell).) But the statute was amended in

18

1927 to broaden the scope of relief. (Stats. 1927, ch. 813, § 1, p. 1620; see Howell, *supra*, at pp. 420-421, 438-439.) After 1927, as long as the counterclaim fulfilled the requirements of tending to diminish or defeat the plaintiff's recovery and involving only parties to the action, it was allowable, regardless of whether the claim related to the plaintiff's cause of action. (*Terry Trading*, at pp. 435-436.) The legislative intent of the amendment "to avoid multiplicity of suits and to have all conflicting claims between the parties settled in a single action was most clearly manifested." (*Id.* at p. 435.) A defendant could "seek affirmative relief by way of counterclaim, which [might] not only defeat plaintiff's recovery but [could] result in an affirmative judgment for defendant on his counterclaim." (*Id.* at p. 438.) The counterclaim was restricted to mutual and reciprocal cross-demands; the counterclaim could "be set up only by a defendant and against a plaintiff between whom a several judgment [might] be rendered." (*Clark v. Lesher* (1956) 46 Cal.2d 874, 882.) And former section 439—the precursor to the compulsory cross-complaint statute at issue here—required that a counterclaim arising out of the transaction alleged in the complaint be pleaded in the action; if it were not " 'set up,' " it was barred. (*Brunswig Drug Co. v. Springer* (1942) 55 Cal.App.2d 444, 449.)

The cross-complaint, in its former version as stated in former section 442, was intended to allow claims related to the complaint to be asserted by a defendant against any party—unlike the counterclaim, which was restricted to a defendant's claims against the plaintiff. After the statute was amended in 1957 (see Stats. 1957, ch. 1498, § 1, p. 2824), the former cross-complaint could be asserted against any third party. (See *Carey v. Cusack* (1966) 245 Cal.App.2d 57, 64.) Under the old statute, there was "a very shadowy line of distinction between a cross-complaint and a counterclaim and a considerable area in which they overlap[ped]." (*Schrader v. Neville* (1949) 34 Cal.2d 112, 114.)

19

In 1971, significant changes to California's cross-claims statutes, recommended by the Law Revision Commission (10 Cal. Law Rev. Com. Report, p. 518 et seq.), were enacted by the Legislature  (See Stats. 1971, ch. 244, p. 380, § 23; see § 426.10 et seq.) The counterclaim was abolished, and any claim heretofore "asserted by counterclaim [would] be asserted by cross-complaint." (§ 428.80.)  Under the new statute, the defendant or cross-defendant could assert in the cross-complaint "any cause of action against any of the parties who filed the complaint or cross-complaint against him [or her]," regardless of whether such claims were related to those upon which the suit was brought.  (§ 428.10, subd. (a).)  Where the cross-complaint was brought against any other person, the cause of action had to be one that "(1) ar[o]se out of the same transaction, occurrence, or series of transactions or occurrences as the cause brought against him [or her] or (2) assert[ed] a claim, right, or interest in the property or controversy which [was] the subject of the cause brought against him [or her]." (§ 428.10, subd. (b).)  The prior compulsory counterclaim rule (see former § 439) was eliminated with the abolition of that form of pleading, and the new law created a compulsory cross-complaint statute, providing that the failure of a party sued "to allege in a cross-complaint any related cause of action which (at the time of serving his [or her] answer to the complaint) he [or she] ha[d] against the plaintiff" would result in the preclusion of that claim "in any other action." (§ 426.30, subd. (a).)

### 3.     Pre-1971 Tolling Cases

In an early case under the former statutory scheme, the California Supreme Court enunciated and applied the tolling doctrine to permit a counterclaim where the limitations period would have otherwise run after the filing of the complaint but before the filing of the counterclaim. (See *Whittier v. Visscher* (1922) 189 Cal. 450 (*Whittier*).)  There, in the defendants' answer to a suit to recover on a promissory note, a cross-demand was alleged against the plaintiff's assignor based upon stockholder liability for indebtedness of the corporation. (*Id.* at pp. 451-452.)  The trial court rejected that counterclaim, inter

20

alia, on the basis that it was time-barred. In addressing the defendants' challenge to that decision, the Supreme Court held: "It is conceded that [the counterclaim] was not so barred when the original action was begun, and the authorities in this state seem to be agreed that, if the right of action relied on was alive at the commencement of the suit, the statute does not run against it, when, as in this case, the full statutory period has expired thereafter during the pendency of the action and before the claim is pleaded as a cross-complaint. [Citations.[8]] . . . [¶] 'If . . . a counterclaim or set-off is not barred at the commencement of the action in which it is pleaded, it does not become so barred afterward during the pendency of that action, and in pleading the statute of limitations to a counterclaim it must be shown that the bar of the statute had matured when the original action was commenced, and it is not sufficient to aver a bar when the counterclaim was filed.' " (*Id.* at p. 456; see also *Perkins v. West Coast Lumber Co.* (1898) 120 Cal. 27, 28 (*Perkins*) ["the filing of the complaint suspends the running of the statute of limitations" on a counterclaim not time-barred when the action was commenced].)

Likewise, in *Jones v. Mortimer* (1946) 28 Cal.2d 627 (*Jones*)—one of the main cases relied on by ZF—the high court considered whether a counterclaim, which was unrelated to the claim alleged in the complaint, was barred by the statute of limitations. The plaintiff had sued an insolvent financial institution, California Mutual Building and Loan Association (Cal-Mutual), and the state's Building and Loan Commissioner for services rendered to Cal-Mutual. (*Id.* at p. 629.) The plaintiff obtained a judgment, and the commissioner approved his claim in liquidation with a reduction by the amount of an unliquidated assessment due from plaintiff because, as a shareholder, he was obligated to pay a pro rata share of Cal-Mutual's indebtedness. (*Ibid.*) The plaintiff refused to accept

---

[8] The Supreme Court at times referred to the subject cross-claim as a "counterclaim," including the last sentence of the opinion. (*Whittier*, *supra*, 189 Cal. at p. 456: "By reason of error in the exclusion of evidence of appellants' counterclaim the judgment is reversed.") At other times, the court referred to the cross-claim as a "cross-complaint." (See *ibid.*)

21

the reduced amount, and filed a proceeding to obtain a writ of execution to enforce the judgment. (*Ibid.*) The plaintiff appealed from an order denying his petition to enforce the judgment.

At the outset, the Supreme Court in *Jones* rejected the plaintiff's contention that the commissioner's failure to file the counterclaim prior to the plaintiff's obtaining a judgment barred the counterclaim under the compulsory counterclaim statute (former section 439). It concluded that the plaintiff's claim and the counterclaim did not arise out of the same transaction, even giving the "broadest meaning" to that term. (*Jones*, *supra*, 28 Cal.2d at p. 630.) The court then addressed whether the counterclaim was time-barred. It reiterated tolling doctrine principles, concluding that "[t]he statute of limitations is not available to plaintiff as to defendants' counterclaim if the period has not run on it at the time of commencement of plaintiff's action even though it has run when the counterclaim is pleaded. [Citations.]" (*Jones*, *supra*, 28 Cal.2d at p. 633; see also *Union Sugar Co. v. Hollister Estate Co.* (1935) 3 Cal.2d 740, 746 (*Union Sugar*) [defendant's counterclaim and setoff for breach of farming contract not time-barred because "filing of the complaint . . . operated to suspend the running of the statute of limitations as to any counterclaim"]; *Holtzendorff v. Housing Authority of the City of Los Angeles* (1967) 250 Cal.App.2d 596, 635 (*Holtzendorff*) [employer's counterclaim for monies paid to reimburse employee for defense costs in case arising out of actions taken during employment not time-barred; under *Jones*, it was deemed filed on filing date of complaint]; *Goodwin v. Alston* (1955) 130 Cal.App.2d 664, 669 (*Goodwin*) [citing *Jones*, holding that counterclaim based upon usurious loan was not barred by statute of limitations, where statute had not run at time complaint to foreclose on loan was filed].)

### 4.    *Post-1971 Tolling Cases*

We are unaware of any post-1971 case that has specifically held that the tolling doctrine applies to permissive, as well as compulsory, cross-complaints, as cross-complaints are defined under section 426.10 et seq. In 1973, the Supreme Court in a

22

footnote, citing *Whittier*, *supra*, 189 Cal. at page 456, described the tolling doctrine broadly: "Ordinarily the statute of limitations will bar a cross-complaint in the same fashion as if the defendant had brought an independent action, unless the original complaint was filed before the statute of limitations on the cross-complaint had elapsed. [Citations.]" (*Liberty Mut. Ins. Co. v. Fales* (1973) 8 Cal.3d 712, 715, fn. 4; see also *id.* at p. 720 (dis. opn., Sullivan, J.) ["a cross-complaint is not barred if the period of limitation has not already run on the cause of action *by the time the complaint is filed*"].)[9] And while *Jones*, *supra*, 28 Cal.2d 627, has been cited by intermediate appellate courts in several post-1971 decisions, those courts, for the most part, have recited the rule stated in *Jones* with a significant, unexplained, revision limiting the tolling doctrine to cross-complaints with claims related to those alleged in the complaint.

TAT chiefly relies on *Trindade v. Superior Court* (1973) 29 Cal.App.3d 857 (*Trindade*) in support of its position that the tolling doctrine applies only to compulsory cross-complaints.[10] In that two-car accident case, Jacolink, the driver of one car, timely sued Trindade, the driver of the second car, for personal injuries. (*Id.* at p. 858.) More than two years after the accident and after receiving leave of court, Trindade filed a cross-complaint for personal injuries against Jacolink. (*Ibid.*) The trial court sustained Jacolink's demurrer to the cross-complaint without leave to amend, concluding that Trindade's claim was barred by the then-existing one-year statute of limitations. (*Id.* at

---

[9] In *City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477, the First District Court of Appeal, although not specifically addressing the applicability of the tolling doctrine to a permissive cross-complaint, described the tolling doctrine broadly: " ' "The filing of the complaint suspends the statute during the pendency of the action, and the defendant may set up his [or her] claim by appropriate pleading at any time. [Citations.]" ' " (*Id.* at pp. 1495-1496, fn. omitted.)

[10] *Trindade*, *supra*, 29 Cal.App.3d 857 is relied on in the two Rutter Group practice guides in which it is stated that the tolling doctrine applies only to compulsory cross-complaints. (See Weil and Brown, *supra*, ¶ 6:592, p. 6–167; Rylaarsdam and Turner, *supra*, ¶ 8:240, p. 8–30.)

23

p. 859.)  The appellate court granted Trindade's petition for writ of mandate, concluding the trial court had erred.  It reasoned:  "It has consistently been held that the commencement of an action tolls the statute of limitations as to a defendant's then unbarred cause of action against the plaintiff, '*relating to or depending upon the contract, transaction, matter, happening or accident upon which the action is brought, . . .*'  (See Code Civ. Proc., § 442.)"  (*Id.* at p. 860, italics added.)

We conclude for several reasons that it is inappropriate to rely on *Trindade* for the proposition that the tolling doctrine applies only to compulsory cross-complaints.  First, although one might potentially read *Trindade* as supporting that proposition, the underlying facts make it clear that it was concerned with what is now a compulsory cross-complaint.  Any purported holding in *Trindade* that the tolling doctrine is inapplicable to permissive cross-complaints was merely dictum.  " 'An opinion is not authority for propositions not considered.'  [Citation.]"  (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 (*Kinsman*).)  Second, the passage of *Trindade* quoted above purportedly limiting the tolling doctrine to related cross-complaints was from former section 442.  That statute defined cross-complaints under the pre-1971 version of the Code of Civil Procedure.  As noted above, before 1971, cross-complaints were permissible only if they related to the underlying action, while counterclaims (after 1927) had no such relatedness requirement.  (See *Royal Indem.*, *supra*, 212 Cal.App.2d at p. 63.)  The quoted passage in *Trindade* may thus be viewed as describing the characteristics of the cross-complaint under former section 442, rather than as a statement that the tolling doctrine does not apply to unrelated cross-complaints.  Third, although the *Trindade* court noted that the 1971 statutory changes were inapplicable because they became effective for cases filed on or after July 1, 1972, and the complaint was filed before that date (*Trindade*, *supra*, at p. 861; see Stats. 1971, ch. 244, p. 394), this begs the question of whether Trindade's pleading was in fact a cross-complaint.  Since the pleading was governed by the former Code, it was, in fact, a counterclaim, because it was

24

one against the plaintiff that tended to diminish plaintiff's claim.[11] Accordingly, Trindade's cross-claim was governed by former section 438, including the *Jones* court's enunciation of the tolling doctrine applicable to counterclaims.

Subsequent cases following *Trindade* contain similar language and are relied upon by TAT for the proposition that the tolling doctrine does not apply to permissive cross-complaints. They, like *Trindade*, are equally unpersuasive. For example, in *Sidney v. Superior Court* (1988) 198 Cal.App.3d 710, 713-714 (*Sidney*), after the plaintiff sued Sidney for personal injuries and property damage and Sidney cross-complained against the plaintiff and his employer, the trial court denied Sidney's later motion to amend his cross-complaint to allege a personal injury claim arising out of the same automobile accident, concluding the claim was time-barred because it was brought more than one year after the accident and its filing did not relate back to the filing of the complaint. (*Id.* at pp. 713-714.) The appellate court (relying on *Trindade*, *supra*, 29 Cal.App.3d at p. 860, and an earlier edition of Weil and Brown, *supra*), granted the petition for writ of mandate, holding: "[A] cross-complaint need only be subject-matter related to the plaintiff's complaint—i.e., arise out of the same occurrence (See §§ 426.10, 428.10)—to relate back to the date of filing the complaint for statute of limitation purposes. [Citation.]" (*Sidney*, at p. 714.) *Sidney*, like *Trindade*, involved a compulsory cross-complaint. To the extent the court in *Sidney* concluded that the tolling doctrine is

---

[11] Indeed, because it concluded that the cross-complaint was timely because it was a claim related to the accident upon which the complaint was brought as provided under former section 443, the *Trindade* court held that it was unnecessary to consider Trindade's alternative contention that, although denominated a cross-complaint, his cross-claim was in fact a counterclaim and that the statute of limitations was tolled by the filing of the complaint under the authority of *Jones*, *supra*, 28 Cal.2d at page 633. (*Trindade*, *supra*, 29 Cal.App.3d at p. 861.)

unavailable to permissive cross-complaints, that holding is dictum. (*Kinsman*, *supra*, 37 Cal.4th at p. 680.)**[12]**

## 5. *Conclusion:  Scope of Tolling Doctrine*

In multiple decisions predating legislation that abolished the counterclaim and redefining the cross-complaint, the Supreme Court characterized the tolling doctrine as embracing *all* cross-claims by a defendant against the plaintiff, regardless of their relatedness to the claims asserted in the complaint.  (See *Jones*, *supra*, 28 Cal.2d at p. 633; *Union Sugar*, *supra*, 3 Cal.2d at p. 746; see also *Whittier*, *supra*, 189 Cal. at p. 456; *Perkins*, *supra*, 120 Cal. at p. 28.)  Because *Jones* and *Union Sugar* were decided after the 1927 amendment to former section 442 that broadened the counterclaim to include both related and unrelated claims, we view those cases as persuasive, if not controlling, authority for the proposition that the tolling doctrine applies to the counterclaim's modern-day equivalent, the cross-complaint.**[13]**  The Supreme Court's

---

**[12]** Other post-*Trindade* cases relied on by TAT that recited the purported rule that the tolling doctrine applies only to cross-complaints that are subject-matter related to the complaint are likewise unpersuasive.  None of the cases (1) concerned a permissive cross-complaint, (2) explained the rationale for not applying the tolling doctrine to permissive cross-complaints, or (3) cited any authority in which a court specifically addressed whether the tolling doctrine should apply to a permissive cross-complaint.  (See *California American Water Co. v. Marina Coast Water Dist.* (2016) 2 Cal.App.5th 748, 762-763 [compulsory cross-complaint for declaratory relief concerning same controversy alleged in complaint]; *Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 69-70 (*Boyer*) [compulsory cross-complaint; defendant's claim for personal injuries against plaintiff arose out of same accident as plaintiff's personal injury claim against defendant]; *Luna Records Corp., Inc. v. Alvarado* (1991) 232 Cal.App.3d 1023, 1027-1028 [compulsory cross-complaint; rescission of contract claim arose out of same agreement that was subject of prior breach of contract claim]; *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 844 [compulsory cross-complaint; accounting firm's cross-complaint for value of services arose out of same relationship as client's claim for accounting malpractice].)

**[13]** We acknowledge TAT's position at oral argument that the statutory language of the counterclaim differs from that defining the current cross-complaint.  Under former section 438, the counterclaim was one that " 'must tend to diminish or defeat the plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between

26

post-1971 recitation of the principle in *Liberty Mut. Ins. Co. v. Fales*, *supra*, 8 Cal.3d at page 715, footnote 4, offers further support for a broader application of the tolling doctrine. And, the rationale for the doctrine—that by filing the complaint "the plaintiff has thereby waived the [statute of limitations defense] and permitted the defendant to make all proper defenses to the cause of action pleaded" (*Western Pipe & Steel Co. of California v. Tuolumne Gold Dredging Corporation* (1944) 63 Cal.App.2d 21, 31)— appears applicable to both compulsory and permissive cross-complaints.

*Trindade*, *supra*, 29 Cal.App.3d 857 and its progeny are the principal authority upon which TAT relies—and upon which the trial court based its decision—in asserting that the tolling doctrine applies only to compulsory cross-complaints. As we have discussed, neither *Trindade* nor subsequent cases relying on *Trindade* addressed the specific issue of whether the filing of a complaint tolled the statute of limitations for a defendant's permissive cross-complaint against the plaintiff. And, as noted, *Trindade*'s statement that the filing of a complaint tolled the statute of limitations for the defendant's claims against the plaintiff " '*relating to or depending upon the contract, transaction, matter, happening or accident upon which the action is brought, . . .*' [citation]" (*id.* at p. 860, italics added) was a quotation of former section 442, which defined the cross-complaint as limited to claims related to the complaint. *Trindade* cannot therefore be

whom a several judgment might be had in the action.' " (*Terry Trading*, *supra*, 210 Cal. at p. 435.) TAT suggests that the "tend to diminish or defeat" language presented a significant limitation to the counterclaim as compared with the current cross-complaint, and this difference renders the holdings in *Jones*, *supra*, 28 Cal.2d at p. 633, and *Union Sugar*, *supra*, 3 Cal.2d at p. 746 inapplicable to cross-complaints. But this argument ignores the fact that under former section 438, a defendant asserting a counterclaim was not limited to reducing or eliminating the plaintiff's recovery; a defendant could "seek affirmative relief . . . which [might] not only defeat plaintiff's recovery but [could] result in an affirmative judgment for defendant on his counterclaim." (*Id.* at p. 438; see also Howell, *supra*, 10 So.Cal. L.Rev. at p. 418 [a defendant was "entitled to a judgment in his favor upon his counterclaim when it exceed[ed] the plaintiff's claim and the plaintiff [would be] liable thereon"].) We therefore find TAT's argument unpersuasive.

27

viewed as persuasive authority for the proposition that the tolling doctrine applies only to compulsory cross-complaints.

We therefore conclude, under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450,455, that we are bound by California Supreme Court precedent to the effect that a defendant's cross-complaint against the plaintiff, irrespective of whether it is related to the matters asserted in the complaint, is entitled to the benefit of the tolling doctrine. While there are certainly countervailing public policy concerns favoring the application of statutes of limitations to bar stale claims (see *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396-397), we cannot ignore existing law that the tolling doctrine is applied broadly to both compulsory and permissive cross-complaints.

Accordingly, the trial court erred in having the jury determine in a first phase of a bifurcated trial whether the ZF cross-complaint was barred by the applicable statute of limitations. Because the filing of TAT's complaint suspended the statute of limitations for any cross-claims by ZF, the cross-complaint, deemed to have been filed on February 14, 2005, was not time-barred and thus no trial on TAT's statute of limitations defense was appropriate.[14]

## DISPOSITION

The judgment, insofar as it was entered on the special verdict in favor of TAT and against ZF Solutions on its first amended cross-complaint, is reversed. Insofar as the judgment was entered on the special verdict in favor Putney on ZF Solutions' second amended complaint, we find no error. ZF shall recover its costs on appeal.

---

[14] Because we conclude that the ZF cross-complaint is not time-barred, we are compelled to reverse the judgment. As a result, we need not address the remaining claims that the ZF Entities contend require reversal as to their case against TAT, i.e., erroneous admission of prejudicial evidence and error concerning jury instructions and the special verdict form. (See *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 655 [appellate courts generally "decline to decide questions not necessary to the decision"].)

_____
           WALSH, J. *


WE CONCUR:



_____
RUSHING, P.J.




_____
PREMO, J.




*ZF Micro Devices, Inc., et al. v. TAT Capital Partners, Ltd., et al.*
H040776

_____
*Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.: 109CV134970 |
| Trial Judge: | The Honorable William J. Monahan |
| Attorneys for Plaintiffs and Appellants<br>ZF MICRO DEVICES, INC. et al.: | Jeffrey A. Berger<br>BERGER LAW OFFICES<br><br>Scott J. Spolin<br>C. Brent Parker<br>SPOLIN COHEN MAINZER |
| Attorneys for Defendants and Respondents<br>TAT CAPITAL PARTNERS, LTD., et al.: | Joseph Nicholas Demko<br>Matthew Scott Kenefick<br>JEFFER, MANGELS, BUTLER &<br>MARMARO LLP |

*ZF Micro Devices, Inc., et al. v. TAT Capital Partners, Ltd., et al.*
H040776